WEBB *v.* WHITE.

4-7348                                    180 S. W. 2d 816

Opinion delivered May 22, 1944.

*D. Leonard Lingo* and *Smith & Judkins*, for appellant.

*W. E. Beloate, Sr.*, for appellee.

GRIFFIN SMITH, Chief Justice. Appeal is from the Court's action in granting Erna Alma White's prayer of March 4, 1942, that title to certain lots in Walnut Ridge be confirmed in her. C. W. Webb, the appellant, intervened and cross-complained, claiming that as grantee under a deed executed by C. E. Elkins his interest was paramount.

The controversy involves the homestead occupied by C. W. and Bessie R. White for nearly forty years, the latter having acquired title in 1903. Their son, Teddy M. White, became a resident of Oklahoma, having moved to Bartlesville. The parents went to Bartlesville in 1932 and spent approximately two and a half years, returning to Walnut Ridge in 1935. Their home was occupied by tenant who attorned to them.

Shortly before her death in 1935, Bessie R. White deeded the property to Teddy, and he (July 13, 1938) conveyed to appellee.

Betterments were assessable in Water and Sewer District No. 2, and in Street Improvement District No. 2. Each district was in default. R. B. Warner was receiver. For the Water and Sewer District, Warner was appointed by the Federal Court at Jonesboro January 16, 1933. His connection with the street district is unimportant except for the purpose of identifying transactions had by Warner with appellee's husband, who was her agent.

It is stipulated that the water-sewer district filed suit in 1932 asking foreclosure of betterment assessments. Chancery decree was in May, 1933. Sale was had two years later, with confirmation September 17, 1935, and approval of deed. The District was purchaser. Writ of assistance, although authorized, did not issue. Appellee and her predecessors in title have been in continuous possession.

While appellant's abstract of testimony shows ". : .. that the taxes have been paid by appellee and those under whom she claims," the stipulation is that ". . . state, county, municipal, and general taxes for 1935, 1936, and 1937 [were paid by Teddy M. White] and Erna A. White has paid [such taxes] for 1938, 1940, 1941, and the first quarter state and county taxes for 1942 [were so paid"]. (It will be observed that 1939 is omitted).

Undisputed evidence is that Teddy M. White, "after his mother's death," read a Walnut Ridge Times-Dispatch advertisement showing delinquencies in respect of the street district. He thereupon (Nov. 4, 1936) wrote Warner as collector, enclosing check for $31. In the letter he mentioned that "water and sewer taxes" were in arrears for about three years, amounting to $85 or $90. He asked if it would be possible "to make payment on this [obligation] as I can afford from month to month." The letter concluded with a statement that the writer would appreciate any help or suggestions.

Warner replied that "delinquencies" were for 1929, 1930, and 1931, amounting to $87.35. An overpayment of $3.85 on street improvement taxes left a balance of $83.77. There was the comment: "I hope you will begin to reduce this as speedily as possible, as the Court has ordered me to take charge of all delinquent properties and collect rents until taxes are paid. We will accept regular monthly payments until this is paid out."

In December, 1936, White paid $5. Eleven months later he sent $25. The stipulation (filed June 18, 1943) is that the balance was $53.77.

Other than documents and records, the only testimony is Teddy M. White's deposition, taken on interrogatories. He did not know of the foreclosure until 1940. In May of that year Warner and Jake Less appeared at White's home in Bartlesville and asked for him. White was at Perry, Oklahoma, where Less went. He (Less) offered to pay $200 for a quitclaim deed, and volunteered the information that there had been a foreclosure.

February 19, 1940, Warner, as receiver, conveyed the property to Elkins, and Elkins (Feb. 2, 1943) quitclaimed to Webb for a recited consideration of one dollar. The receiver's deed to Elkins recited payment of $80, ". . . cancelling all. delinquencies to and including the assessments payable in 1931."

In an order of May 3, 1939, the District Court at Jonesboro authorized Warner ". . . to accept delinquent taxes and make sales, [of the water-sewer district property] giving deeds therefor, at a discount, or for less than the taxes past-due thereon, the price to be agreed upon by the Receiver and Board of Commissioners."

It is apparent that Warner, in his letter to White, did not inform the latter that the District had title. He mentioned delinquencies for three specified years, and without consulting White took $3.85 from the $31 payment intended for the street district and applied it to the water-sewer obligation. White's subsequent actions amounted to ratification.

The Receiver was under no legal obligation to notify White that foreclosure had been effectuated; but, under the comprehensive authority conferred by the Federal Court, the receiver, with concurrence of the commissioners, had discretion to treat the Chancery Court's decree as having vested title, (which of course it did) or to waive the absolute rights thus fixed and treat with former owners on the basis of delinquent installments as a consideration for repurchase. White was told that water-sewer taxes "were in arrears for about three years." Payment of "this obligation" was suggested on a month to month basis. The suggestion amounted to consent that the matter be handled in that way. White again defaulted, if it be assumed that in paying $5 in December, 1936 (following Warner's letter of November 4) an inference attached that an equal amount would be paid each month. Payment of $25 in November, 1937, could hardly be said to be a compliance with the reasonable inference that "regular" payments would be expected, as expressed in Warner's letter.

But even so, Warner had no right to take $3.85 from the $31 check intended for a different purpose and either apply it to White's delinquent taxes, or call it a down payment on purchase price. In so doing, Warner in effect told White that he owed a tax obligation on his own property, although as a matter of fact and as a matter of law, the District was proprietor.

Warner had power, under the Federal Court decree, to treat the indebtedness as an obligation which, when discharged, would cause the property to revert to White. In the absence of proof to the contrary, it will be presumed that in dealing with White, Warner had the Commissioners' approval. If payments made by White should be treated as purchase price money, he had an equity that could not be arbitrarily disregarded. It was prior to the rights acquired by Elkins. If the remittances are to be treated as partial payments on taxes upon the assumption (an assumption we do not assert) that the District's rights acquired by foreclosure were waived, White would have the right to make final settlement.

Because of White's procrastination, Elkins was led to believe that the District had a right to sell at the time and in the manner it did, and he should not suffer loss of the principal payment of $80. Not being a party to this suit, relief cannot be given. His equity passed to Webb. But Webb did not seek reimbursement of this particular item, or pray for general equitable relief. His demand, in the event White prevailed on the question of title, was that he recover $74.60, ". . . the amount laid out and expended herein in payment of taxes, with interest." The decree is that Webb ". . . is not entitled to return of the consideration paid to the District of any taxes he might have paid, since none was asked or shown paid by him, and [there is] no evidence that he has paid such."

The District is in the position of having sold to Elkins for $80 when White's balance (without reference to interest) was $53.77. Appellee will be required to pay this amount into Chancery Court for determination by

that tribunal regarding Webb's rights to it after testimony has been heard.

We do not think title in appellee by adverse possession can be sustained. The arrangement by which White kept the District from having the writ of possession issued and served was mutual, although in all probability neither party had a very clear understanding of the other's ultimate intentions.

That part of the decree quieting title in appellee is affirmed, with the modification that a lien is declared against the property for the balance due by White. For the purpose of allowing Webb to assert his rights to this sum, the cause is remanded.